LAWSON LAW OFFICES
ANTONIO M. LAWSON [State Bar # 140823]
tony@lawsonlawoffices.com
160 Franklin Street, No. 209
Oakland, CA 94607
(510) 419-0940
(510) 419-0948 (*fax*)

LAW OFFICES of KENDRA L. TANACEA
KENDRA L. TANACEA [State Bar #154843]
kendra.tanacea@sbcglobal.net
198 Corbett Avenue
San Francisco, CA 94114
(415) 934-8844
(415) 934-8840 (*fax*)

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

ROBERT SPURR, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BP PRODUCTS NORTH AMERICA., INC.

Defendants.

Case No. SA CV08-0781 DOC (MLGx)

**JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT**

Date: AUGUST 30, 2010
Time: 8:30 am
Courtroom: 9D
Judge: Hon. David O. Carter

NOTICE IS HEREBY GIVEN that on August 30, 2010, at 8:30 a.m., or as soon thereafter as the matter may be heard in the above-entitled Court, Plaintiff Robert Spurr ("Plaintiff") and Defendant BP Products North America ("BP") will and hereby do move the Court as follows:

1. To finally approve the Settlement Agreement (attached to the Proposed Final Approval Order ("Proposed Order") as Exhibit (A) between Plaintiff, on behalf of himself and the class certified by the Court in its Order of April 19, 2010, and Defendant BP, by and through its counsel.

This motion is based on the Memorandum of Points and Authorities filed herewith and in support of this Motion, the Declarations of Antonio Lawson and Eric Springer in Support of the Motion for Final Approval of Settlement Agreement, and all other papers filed in this action.

Dated:August 26, 2010

/S/
ANTONIO M. LAWSON
LAWSON LAW OFFICES
Counsel for Plaintiff
Robert Spurr

Dated:August 26, 2010

/S/
ALEXANDRA A. BODNAR
SQUIRE, SANDERS & DEMPSEY LLP
Counsel for Defendant
BP Products North America Inc.

# TABLE OF CONTENTS

Page

I. INTRODUCTION…………………………………………………………...….3

II. STATEMENT OF THE CASE AND PROCEDURAL HISTORY……..…...3

III. TERMS OF THE SETTLEMENT…………………………………...……4

IV. ARGUMENT..........................................................................................5

A. The Notice Provided by the Parties Satisfies Due Process and F.R.C.P. 23(b)(3) and (e)..........................................................................5

B. The Proposed Settlement Agreement is Fair, Reasonable, and Adequate..........................................................................................6

1. The Settlement Will Benefit the Class …………………………7

2. The Settlement Was Reached After Plaintiffs Completed Discovery And Through Arm's-Length Negotiation Late In The Litigation……………………………………..…………..10

3. The Recommendations of Experienced Counsel Favor Approval of the Settlement....................................................................11

4. Litigating This Action Would Be Risky, Expensive, and Time Consuming, and Delay Any Recovery......................................12

5. Class Member's Positive Reaction to the Settlement Favors Final Approval..........................................................................13

C. Class Counsel's Request For Attorney Fees Is Appropriate…………14

D. Class Counsel Contends that Plaintiff's Request For A Service Award is Appropriate…………………………………………………...…15

VII. CONCLUSION…………………………………………………..………17

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Barrios v. Cal. Interscholastic Foundation*, 277 F.3d 1128 (9th Cir. 2002) ........ 15

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ........ 11

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) ........ 16

*Mangold v. Cal. Public Utilities Commission*, 67 F.3d 1470 (9th Cir. 1995) ........ 14

*In re Mego Finance Corp. Sec. Litigation*, 213 F.3d 454 (9th Cir. 2000) ........ 12

*National Rural Telecomm. Coop. v. DIRECTV, Inc.*,, 221 F.R.D. 523 (C.D. Cal. Jan. 5, 2004) ........ 10, 11, 12

*Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615 (9th Cir. 1982) ........ 6, 13

*In re Omnivision Technologies Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) ........ 11

*Reed v. General Motors*, 703 F.2d 170 (5th Cir. 1983) ........ 14

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ........ 5

*In Re Southern Ohio Correctional Facility*, 175 F.R.D. 270 (S.D. Ohio 1997) ........ 16

*Texas State Teachers Association v. Garland Sch. District*, 489 U.S. 782 (1989) ........ 15

*Wash. Pub. Power Supply System Sec. Litig.* 720 F. Supp. 1379 (D. Ariz. 1989) ........ 14

### STATE CASES

*Brinker Restaurant Corp. v. Superior Court (Hohnbaum)*, 2008 WL. 2806613 (Cal. Ct. App., July 22 (2008) ........ 13

*Brinkley v. Public Storage*, 2008 WL. 4716800 (Cal. Ct. App., October 28, 2008) ........ 13

*Browning v. Yahoo, Inc.*, C04-01463 HRL 2006 WL. 3826714 (N.D. Cal., Dec. 27, 2006) ........ 10

## TABLE OF AUTHORITIES (CONT'D.)

**Page(s)**

*Folsom v. Butte County Association of Gov'ts*, 652 P.2d 437 (1982) .......... 15

*Graham v. Daimler-Chrysler Corp.*, 101 P.3d 140 (2004) .......... 14

*Ketchum v. Moses*, 17 P.3d 735 (2001) .......... 14

*Knight v. Red Door Salons, Inc.*, 2009 WL. 248367 (N.D. Cal., Feb 02, 2009) .......... 6

*Serrano v. Priest*, 569 P.2d 1303 (1977) .......... 14

*Sokolow v. County of San Mateo*, 261 Cal. Rptr. 520 (Cal. Ct. App. 1989) .......... 15

### STATUTES

Fed. R. Civ. P. Rule 23(e) .......... 5, 6

Bs. & Prof. Code § 17200 .......... 3

Bs. & Prof. Code § 17208 .......... 3

Lab. Code § 204 .......... 3

Lab. Code § 210 .......... 3

Lab. Code § 266.7 .......... 3

Lab. Code § 510 .......... 3

Lab. Code § 558 .......... 3

Lab. Code § 1194.5 .......... 3

Lab. Code § 2698-2699.5 .......... 4

### TREATISES

California Labor Code, Industrial Welfare Commission Wage Order No. 9-2001 .......... 3

Manual for Complex Litigation § 30.42 (4th ed. 2004) .......... 16

## I. INTRODUCTION

This is a class action in which plaintiff alleges that defendant BP Products North America Inc. (hereinafter referred to as "BP" or "Defendant") denied former and current California transport drivers meal periods in violation of the California Labor Code, Industrial Welfare Commission Wage Order No. 9-2001 and California Business and Profession Code § 17200. California law requires that employees who work more than five hours per day receive a thirty (30) minute unpaid meal period where they are relieved of all job responsibilities. The law further requires that employees who work more than ten (10) hours in a day are entitled to a second unpaid meal period of thirty (30) minutes. Plaintiff alleges that BP drivers worked in excess of ten (10) hours daily without required meal breaks. BP denies all liability for such claims and contends that its employment practices have complied with all applicable federal, state and local laws at all times. After nearly two years of litigation, extensive discovery and a hearing on plaintiff's motion for class certification, the parties, through the assistance of Magistrate Judge Marc Goldman, reached agreement on the settlement set forth below. This Joint Request is submitted by the parties to respectfully request final approval of the Proposed Settlement.

## II. STATEMENT OF THE CASE AND PROCEDURAL HISTORY

Robert Spurr has been a transport driver for BP and its predecessor Atlantic Richfield Company (Arco) since 1984. Defendant BP Products North America Inc. delivers petroleum products to retail service stations and other facilities throughout California. BP maintains terminals in California from which they operate tanker trucks to transport bulk petroleum products including gasoline. Plaintiff Spurr has worked at several of BP's California terminals including those in Vinvale, Carson and Colton. This case only involves terminals located in California.

On July 16, 2008, Mr. Spurr filed his complaint against BP alleging violations of California Labor Code sections 204, 210, 266.7, 510, 558, 1194.5 and

2698-2699.5, and California Business & Professions Code sections 17200-17208. Specifically, Plaintiff alleges that Defendant failed to provide meal periods to its drivers in California in accordance with the law.

The Parties have conducted significant discovery and investigation of the facts and law both before and after the action was filed. Such discovery and investigation have included, *inter alia*, the exchange of information pursuant to formal discovery and informal discovery, meetings and conferences, and interviews of potential witnesses. The parties have propounded and responded to interrogatories, document requests, and requests for admission; analyzed thousands of pages of documents, including class compensation and job history data; taken three depositions, including two 30(b)(6) depositions and the Plaintiff's deposition; met and conferred on several discovery requests; and litigated one discovery motion. The Parties submitted class certification briefs and attended the class certification hearing on November 30, 2009. At that time, this Court continued the matter for further hearing and directed the parties to a mandatory settlement conference with Magistrate Judge Marc Goldman. The Settlement is the result of the mandatory settlement conference. On April 19, 2010, this Court granted preliminary approval of the Settlement. Declaration of Antonio Lawson, ¶ 3.

## III. TERMS OF THE SETTLEMENT

The Settlement Agreement provides that Defendant will make a maximum total settlement payment of $800,000.00 (eight-hundred thousand dollars) ("Maximum Settlement Amount"). The Maximum Settlement Amount in this Action has the following components: (1) the Settlement Awards to the class; (2) the Service Award of up to $12,000 to Plaintiff Robert Spurr; (3) a $5,000 payment to the California Labor and Workforce Development Agency (LWDA) for the Private Attorney General (PAGA) claims; (4) an Attorney Fee and Expense Award of up to $200,000 to class counsel; (5) Administration Costs up to $25,000 to the Claims Administrator; and (6) Defendant's share of all employer-paid payroll taxes

which must be remitted on payments to Authorized Claimants, including but not limited to Federal and California unemployment insurance tax, California Employment Training Tax, FICA and Medicare contributions. Lawson Decl., ¶ 2, Exhibit A.

Pursuant to the settlement agreement that this Court preliminarily approved (Id., ¶ 3, Exh. B), the attorneys' fees and costs, service award, LWDA and administration cost payments, and Defendant's share of all employer-paid payroll taxes are to be deducted from the Maximum Settlement Amount prior to calculation of the settlement shares for all class members. *Id*., ¶ 2, Exh. A. The net settlement proceeds are be distributed on a claims-made basis to those Class members who file a proper and timely claim form. Each class member's share of the Net Settlement Amount was to be calculated in proportion to the number of weeks worked by that individual class member to the total weeks worked by all class members. Any funds not claimed by a class member are to be provided to Mothers Against Drunk Driving.

## IV. ARGUMENT

### A. The Notice Provided by the Parties Satisfies Due Process and F.R.C.P. 23(b)(3) and (e).

"Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. West Publishing Corp*., 563 F.3d 948, 962 (9th Cir. 2009) (internal quotations and citations omitted). The Court approved the Class Notice Packet sent to Class members before they were sent out. Lawson Decl.,¶ 3.

As set forth above, the Claims Administrator has provided the notice prescribed in the Court's Preliminary Approval Order. Declaration of Eric Springer, ¶¶ 5-10. On May 10, 2010, the Claims Administrator mailed the Class Notice Packet all known potential class members. *Id*. ¶ 7. The Class Notice Packet was mailed to 264 class members. *Id.* Upon expiration of the claim period expired on

July 9, 2010, 196 valid claims were filed. Springer Decl. at ¶11. Accordingly, 74% of all class members filed valid claims. *Id*. There were no exclusions or objections filed. Springer Decl. at ¶13.

Accordingly, the notice procedure previously approved by the Court and now implemented by the Claims Administrator was the best notice practicable under the circumstances and satisfied the requirements of due process and F.R.C.P. 23(e).

**B. The Proposed Settlement Agreement is Fair, Reasonable, and Adequate.**

"The Ninth Circuit's policy favor[s] settlement, particularly in class action law suits." *Knight v. Red Door Salons, Inc*., 2009 WL 248367, at *3 (N.D. Cal., Feb 02, 2009); s*ee also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Final approval of a proposed class action settlement should be granted where the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). In determining whether to grant final approval, "the Court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

The Court should balance "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement. *Id.* The relative importance of any particular factor will depend upon the nature of the claims, the types of relief sought, and the unique facts and circumstances presented by the individual case. *Id*. Furthermore, "[n]ot all of these factors will apply to

every class action settlement. Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. Jan. 5, 2004) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).

As explained below, these factors support a finding that the Settlement is fair, adequate, and reasonable.

**1. The Settlement Will Benefit the Class.**

Pursuant to paragraph 48 of the Stipulation, the parties agreed that "Defendant will make a maximum total settlement payment of up to $800,000.00 (eight-hundred thousand dollars) ("Maximum Settlement Amount"). Settlement Awards will be distributed on a claims-made basis. If, after ninety (90) days from the date on which the last settlement check is mailed, any of the funds transferred to the Settlement Administrator for claims made remain, the Settlement Administrator shall within ten (10) days issue direct payment of the remaining funds to Mothers Against Drunk Driving (M.A.D.D.) The Maximum Settlement Amount in this Action has the following components: (1) the Settlement Awards; (2) the Service Award; (3) $5,000 payment to the LWDA for the PAGA claims; (4) the Fee and Expense Award; (5) the Administration Costs up to $25,000; and (6) Defendant's share of all employer-paid payroll taxes which must be remitted on payments to Authorized Claimants, including but not limited to Federal and California unemployment insurance tax, California Employment Training Tax, FICA and Medicare contributions. Any unclaimed Settlement Award amounts will be donated as a cy pres payment to Mothers Against Drunk Driving (M.A.D.D.)." Lawson Decl., ¶2, Exh. A at ¶ 48. The Notice sent to Class Members, which this Court also approved, further provides "any unclaimed Settlement Award amounts will be donated to a charity selected by Plaintiff and BP." Springer Decl., Exh. A.

Paragraph 55 of the Stipulation provides the method for allocating individual settlement awards to Class Members. It states:

> each Class Member who submits a timely, valid claim form will receive 1 point for each week in which he/she was employed by BP between July 16, 2004 and Preliminary Approval. 1 point will be subtracted for every 4 days of vacation, leave of absence or a combination of both. If the number of days taken for vacation, leave of absence or a combination of both are less than 4, no points will be deducted. The Net Settlement Amount will be divided by the total points during the Settlement Class Period to arrive at the individual Settlement Award for each Class Member. The Parties agree that the formula for allocating the Settlement Awards to the Class Members provided herein is reasonable and that the payments provided herein are designed to provide a fair settlement to such persons, in light of the uncertainties of the compensation alleged to be owed to the Class Members and the calculation of such amounts.

Lawson Decl., ¶2, Exh. A, at ¶ 55. The parties agreed to this method of allocation and the Court preliminarily approved it as fair, adequate and reasonable.

There were 265 potential class members. Of that number, 196, or 73.96% filed valid claims in this action. Springer Decl., ¶11. The cost of administration of the settlement was $10,000. Springer Decl. ¶16. The Settlement Administrator has calculated the employer share of the taxes at $26,593.15. Springer Decl. ¶¶11,17.

A slight ambiguity exists with respect to the distribution of the class fund which the parties request this Court resolve. The issue is whether the class fund is distributed based on point values assigned to class members who do not submit valid and timely claim forms or point values assigned to only those class members who submit valid and timely claim forms. The Settlement Administrator initially calculated the distribution of the class fund by assigning point values to every potential class member whether the class member filed a valid claim or not. Applying this formula, the Settlement Administrator calculated the following

payments to be made from the Maximum Settlement amount of $800,000 upon approval of the Settlement by this Court: (1) $445,073.61 to the class (minus employee share of taxes); (2) $12,000 to Robert Spurr as Class Representative; (3) $5,000 to the Labor Workforce Development Agency; (4) $200,000 to Class Counsel for their fees and costs; (5) $10,000 to Simpluris, Inc. for the actual administration costs; (6) employer taxes of $26,593.15; and $101,333.24 (the amount representing the unclaimed portion allocated to the class) to Mothers Against Drunk Driving. Springer Decl., ¶ 11. BP agrees with this calculation.

Class Counsel advised the Settlement Administrator that Plaintiff reads Paragraph 55 of the Settlement Agreement, which defines the distribution process, to assign point values to only those class members who file valid and timely claims. The Settlement Fund would then be divided based on the total points of valid class members. The result would be that the $101,333.24, roughly 25% of the class fund, would not be assigned to the cy pres recipient, Mothers Against Drunk Driving, but instead be distributed to the class. Plaintiff contends the Stipulation provides that the entire Net Settlement Amount should be distributed to the Class Members and only uncashed checks should be distributed as cy pres to Mothers Against Drunk Driving. Based on Plaintiff's interpretation of the settlement, the following payments would be made from the Maximum Settlement amount of $800,000 upon approval of the Settlement by this Court: (1) $546,406.85 to the class (minus employee share of taxes); (2) $12,000 to Robert Spurr as Class Representative; (3) $5,000 to the Labor Workforce Development Agency; (4) $200,000 to Class Counsel for their fees and costs; (5) $10,000 to Simpluris, Inc. for the actual administration costs; and (6) employer taxes of $32,306.44. Springer Decl.,¶ 11. Any uncashed checks would then be distributed to Mothers Against Drunk Driving.

BP believes the initial allocation by the Settlement Administrator is correct, but BP is amenable to any adjustments the Court deems necessary to find that the settlement is fair and adequate. BP does not have a reversion interest in any of the

money from the Maximum Settlement Amount. Nevertheless, it recognizes that the Court already approved a particular method of allocation, and determined that method to be fair, and BP does not want to take any action with respect to the allocation method without Court approval.

The Settlement provides substantial benefits to the members of the Class in terms of a cash settlement payable in one payment and paid not long after the commencement of the litigation. The Settlement is enhanced by the fact that there are no non-cash benefits to the settlement such as paid time off or coupons. The amounts for which Class Members are eligible are not only in line with other similar settlements but also are commensurate with the value of the claim adjusted for risk. The amounts to be paid are not nominal or symbolic. The Settlement Administrator has calculated that the 196 class members who filed valid claims will recover approximately $445,073.61 or $546,406.85, for an average per capita recovery of $2,270.78 or $2,758.64 depending upon this Court's ruling. Springer Decl., ¶11. These are substantial benefits in relation to the claimed harm suffered by the Class and therefore favor approval of the Settlement. Of course, the parties are not opposed to re-allocating the dollar amount earmarked for Mothers Against Drunk Driving (based on the class members who did not make claims) to the Class Members who did make claims if the Court determines that is necessary for the settlement to be fair and reasonable.

**2. The Settlement Was Reached After Plaintiffs Completed Discovery And Through Arm's-Length Negotiation Late In The Litigation.**

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Browning v. Yahoo, Inc.*, No. C04-01463 HRL, 2006 WL 3826714, at *8 (N.D. Cal., Dec. 27, 2006) (quoting *Nat'l Rural Telecomm.*, 221 F.R.D. at 528).

Here, Plaintiff settled the case only after he had completed significant discovery, extensive pre-suit investigation and file his motion for class certification. Lawson Decl. ¶ 2. Indeed, the case was settled after oral argument on plaintiff's motion for class certification. *Id*. Class Counsel therefore settled with the benefit of an extensive factual record aware of the strengths and weaknesses of their claims as well as the strengths and weaknesses of their defenses. *Id. at* ¶ 4. Defendant BP also had such knowledge.

In addition, this Settlement Agreement is the result of genuine arm's length negotiations. After oral argument on class certification, this Court directed the parties to a mandatory settlement conference. After a day-long settlement conference with Magistrate Judge Marc Goldman, the parties were able to reach the settlement presented for final approval. Lawson Decl.,¶ 2.

As a result of settlement after two years of litigation and the arm's-length nature of the settlement negotiations, the Court has substantial guaranty of the fairness of the Settlement.

**3. The Recommendations of Experienced Counsel Favor Approval of the Settlement.**

In appraising the fairness of a proposed settlement, the judgment of experienced counsel favoring the settlement is entitled to substantial weight and also should be accorded a "presumption of reasonableness." *In re Omnivision Technologies Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. Jan. 9, 2008) (citing *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Nat'l Rural Telecomm.*, 221 F.R.D. at 528 (internal quotations and citations omitted) (noting counsel are "most closely acquainted with the facts of the underlying litigation.") Here, counsel for the parties jointly submit that the Settlement is fair, adequate, and reasonable.

The Court appointed the undersigned Plaintiffs' counsel as Class Counsel after considering their qualifications and experience. Lawson, ¶3, Exh. A. Class

Counsel have extensive experience in prosecuting civil rights class actions generally, and employment class actions specifically. *Id.*, ¶5 . It is their considered opinion that the Settlement is excellent and achieves the best result possible for class members under the circumstances. *Id.*, ¶8.

**4. Litigating This Action Would Be Risky, Expensive, and Time Consuming, and Delay Any Recovery.**

A settlement is evaluated in light of the risks and costs of litigation. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). "The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecomm.*, 221 F.R.D. at 526. "'[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Id.* (quoting 4 A. Conte 7 H. Newberg, *Newberg on Class Actions* § 11:50 at 155 (4th ed. 2002)).

Among the factors that support final approval of this Settlement are the strength of Plaintiffs' case, the risks and complexity of continued litigation, the stage of the litigation, and the amount offered in Settlement. While Plaintiffs believe they have a strong case and would ultimately prevail, BP continued to vigorously deny and contest liability and also contended that a class action could not be properly maintained because Plaintiff could not satisfy the criteria to certify a class under the Federal Rules of Civil Procedure. Continuing with the litigation posed risks and uncertainties for the Class, including the possibility that the Class could recover limited or no injunctive or monetary relief.

Additionally, the legal issues in this case are unsettled. The sole claim in this Action, failure to provide meal periods, is the subject of an unsettled legal standard. Both federal and state courts are divided on what it means "to provide" meal periods under the law. On October 22, 2008, and January 14, 2009, the California

Supreme Court granted review of (and consequent depublications) of the Court of Appeal decisions in *Brinker Restaurant Corp. v. Superior Court (Hohnbaum)*, 2008 WL 2806613 (Cal. Ct. App., July 22, 2008), and *Brinkley v. Public Storage*, 2008 WL 4716800 (Cal. Ct. App., October 28, 2008) to address the applicable standard for meal periods. Given the uncertainty of the legal issues in this case, the monetary compensation secured for the class is clearly "reasonable."

Employment class action cases are expensive and time-consuming to prosecute. Continued litigation of this action against BP would likely be complex and expensive due to the size of the class and the nature of the claims. The Settlement avoids the need for the Court to decide Plaintiff's contested class certification motion that would be time consuming for the Court. In addition, if the Court were to deny Plaintiff's motion for class certification, Class Members would be left without a group remedy for their claims. The other issues presented here would need to be litigated individually in superior or district courts in a piecemeal, costly, and time-consuming fashion. The Settlement also avoids a lengthy trial or trials that likely would have involved testimony by numerous witnesses and experts.

The settlement negotiated by the parties reasonably represents the risk associated with their respective positions. The resolution provides substantial monetary compensation to the members of the Settlement Class. The compensation provided by the resolution is within the range of "reasonableness" considering the uncertainty of the legal issue in dispute.

**5. Class Member's Positive Reaction to the Settlement Favors Final Approval.**

Finally, courts look at the reaction of class members to determine if a settlement that directly affects their interests should be approved as fair, adequate, and reasonable. *Officers for Justice*, 688 F.2d at 625. Of great importance is the fact that no Class Member has objected to the Settlement here. Springer Decl. at ¶

14. Also significant is the fact that none of the 264 Class Members opted out of the Settlement. *Id*. at ¶ 13. Such a positive reaction of the Class Members affected by the Settlement supports its approval. A court may appropriately infer that a class action settlement is fair, adequate, and reasonable even when class members object to it. Indeed, a court may approve a class action settlement as fair, adequate, and reasonable even over the objections of a significant percentage of class members. *See Reed v. General Motors* (5th Cir. 1983) 703 F.2d 170, 174; *In re Wash. Pub. Power Supply System Sec. Litig*. (D. Ariz. 1989) 720 F. Supp. 1379, 1394 ("settlement is not to be deemed unfair or unreasonable simply because a large number of class members oppose it"). In this action, the Court should construe the overwhelming non-opposition to the Settlement as a strong indication of Class Members' support for the Settlement as fair, adequate, and reasonable.

**C. Class Counsel Contends its Request For Attorney Fees and Costs Is Reasonable.**

Class Counsel contends they are entitled to an award of fees and costs because they obtained substantial relief. Class Counsel contends since they prevailed on state statutory grounds that separately provide attorneys' fees and costs remedies, the Court should award fees and costs based on state law. *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

Under California's adjusted lodestar approach to attorneys' fees, a lodestar figure is obtained by multiplying the reasonable hours worked by a reasonable hourly rate. *See Ketchum v. Moses*, 17 P.3d 735, 741-42 (2001); *Serrano v. Priest*, 569 P.2d 1303, 1315 (1977). After deriving the lodestar figure, the court then determines if an adjustment is appropriate based on specific factors. *Ketchum*, 17 P.3d at 741.

A party is deemed to have prevailed in a case for purposes of qualifying for an award of attorneys' fees and cost if the party "realized its litigation objectives whether by judgment, settlement or otherwise." *Graham v. Daimler-Chrysler*

*Corp.*, 101 P.3d 140, 152 (2004) (internal quotation omitted); *Folsom v. Butte County Ass'n of Gov'ts*, 652 P.2d 437, 450 (1982) (settlement); *Barrios v. Cal. Interscholastic Found.*, 277 F.3d 1128, 1134 (9th Cir. 2002) (plaintiff prevails when he or she "enters into a legally enforceable settlement agreement against the defendant"). A party is deemed to have prevailed even if, as here, all the relief originally sought was not obtained. *See Sokolow v. County of San Mateo*, 261 Cal. Rptr. 520, 529-30 (Cal. Ct. App. 1989); *Texas State Teachers Ass'n v. Garland Sch. Dist.*, 489 U.S. 782, 791-92 (1989).

Here, Class Counsel contends they have obtained significant relief including assurances that all BP drivers in California will be provided meal periods in accordance with California law and a nearly $445,000 monetary award. This relief is particularly significant in light of the unsettled nature of the legal issues in this case, as discussed in section IV(B)(4)above. Further, Class Counsel has taken a reduction in fees and costs to ensure settlement of this matter.

The Settlement Agreement provides an award of no more than $200,000 in attorneys' fees and costs to Class Counsel. Lawson Decl., ¶ 2, Exh. A. However, Class Counsel have accumulated, to date, more $262,000 in costs and fees. Lawson Decl.,¶5. Thus, Class Counsel have reduced their fees by 24% to facilitate a fair and reasonable settlement for the class. Additionally, Class Counsel will retain an on-going responsibility to ensure fair and just administration of the settlement. Pursuant to the settlement agreement between the parties, Defendant does not contest the award to Class Counsel.

**D. Class Counsel Contends that Plaintiff's Request For A Service Award Is Appropriate.**

Plaintiff and his counsel believe that a payment of up to $12,000 to Plaintiff for his services as class representative is fair and appropriate. A separate payment to a named class representative is intended to recognize his time and efforts on behalf of the class. "'Courts routinely approve incentive awards to compensate

named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation.'" *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001)(quoting *In Re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997); see also *Manual for Complex Litigation*, *supra*, §30.42. n.763 (noting that such awards "may sometimes be warranted for time spent meeting with class members or responding to discovery"). In the *Coca-Cola* case, the Court approved significant incentive awards to each named plaintiff in recognition of the services they provided to the class by responding to discovery, in the mediation process and taking the risk of stepping forward on behalf of the class. See *Coca-Cola*, 901 F.Supp. 294 (N.D. Cal. 1995)(approving $50,000 participation award).

Class Counsel represents that plaintiff assisted Class Counsel in preparing and responding to discovery, prepared for and attended his day long deposition, assisted Class Counsel in preparation for two PMK depositions, reviewed hundreds of pages of documents, responded to dozens of inquiries by class members and attend the hearing on class certification. Class counsel contends that although several drivers contacted class counsel about claims against BP for failure to provide meal periods, Robert Spurr was the only driver willing to serve as class representative as others either feared retaliation or were unwilling to accept the responsibilities of class representative. Lawson Decl. ¶ 6.

Pursuant to the settlement agreement among the parties, Defendant does not contest the enhancement to Plaintiff.

///

///

///

///

///

///

## VII. CONCLUSION

For the foregoing reasons, the Parties respectfully requests this Court grant the motion for final approval of the class settlement.

Dated: August 26, 2010

/S/
ANTONIO M. LAWSON
LAWSON LAW OFFICES
Counsel for Plaintiff
Robert Spurr

Dated: August 26, 2010

/S/
ALEXANDRA A. BODNAR
SQUIRE, SANDERS & DEMPSEY LLP
Counsel for Defendant
BP Products North America Inc.